United States District Court
Middle District of Florida
Jacksonville Division

**ASTER FITCH,**

    *Plaintiff,*

v.                                             NO. 3:20-cv-1077-PDB

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

# Order

Aster Fitch brings this action under 42 U.S.C. § 1383(c)(3) to review a final decision of the Acting Commissioner of Social Security denying her application for supplemental security income.

Under review is a decision by an Administrative Law Judge ("ALJ") dated April 24, 2020. Tr. 30–46. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 33–41, and the parties' briefs, Docs. 20, 21, and not fully repeated here.

Fitch contends the decision is not supported by substantial evidence because the ALJ failed to consider her abdominal issues and nausea. Doc. 20. The pertinent period is November 22, 2018 (the date she applied for benefits) to April 24, 2020 (the date the ALJ issued the decision).[1] *See* 20 C.F.R. § 416.501; Tr. 41, 256.

---

[1] Fitch dated her application November 22, 2018. Tr. 256. Other documents state the application date is December 11, 2018. *See, e.g.*, Tr. 138. The difference is immaterial here.

Fitch was born in September 1966. Tr. 236. In her application for benefits, she alleged disability since August 2010 from thyroid disease, hip-bone pain, pelvic-bone pain, lower-back pain, mild multiple sclerosis, chronic-pain-syndrome arthritis, sacroiliac-joint pain, high blood pressure, dysthymic lumbosacral radiculopathy, and piriformis-muscle pain. Tr. 138.

At an administrative hearing in April 2020, Fitch testified about her impairments and symptoms. Tr. 47–61. Her testimony included this exchange with her lawyer:

Q  Do you have any intestinal problems --

A  Yes.

Q  -- or GI problems?

A  Yes, I do.

Q  Could you describe that, please?

A  Oh, yes, I've had two surgeries called Nissen fundoplication because I had acid reflux very bad. The gentlemen that did that, it didn't work, and now I'm having problems from that again. I just recently had another hernia surgery, May 19th of [2019] and that hasn't worked out because now I have the hernia again. I'm having a lot of intestinal problems as far as eating, going to the bathroom. I'm getting ready to go in May and have the minor procedure done to put a camera inside so they can find out what's going on with my intestinal problems. And also, maybe having hernia surgery again.

Q  Do you have nausea?

A  Yes.

Q  Do you have it every day?

A  Yes.

Q  How long does it typically last?

A   Well, I have medication for that so, when I take it within 10 minutes to 15 minutes, it's okay.

Q   Okay. And then, do you have to take more nausea medication throughout the day or --

A   Yes, because when I eat, the problem is I can't throw up. The -- however he done the surgery, I'm not able to vomit, so, it takes a while for me, I have to lay down, lay, [INAUDIBLE] but most of the time when I eat something, it doesn't[2] make me nauseous, so that's what they're trying to find out what is going on with me and my intestines and my stomach, because of that. I also take a medication called Rabeprazole [for stomach and esophagus problems, like acid reflux], because when I eat, it has where my stomach gets feeling so bloated and so big, 'til be able to -- be able to have a regular bowel movement and all that.

Q   Okay. Do you have more frequent restroom breaks as a result?

A   Yes, yes. I'm going to the bathroom more than I've done before.

Q   Does it take you longer to go to … the restroom?

A   Yes, it does.

Q   Do you fluctuate between diarrhea and constipation --

A   Yes, very bad --

Q   Okay.

A   -- that's why I'm sick sometimes.

Q   When you say [INAUDIBLE] history, folks at UF Health?

A   Yes.

Q   Gastroenterology?

A   Yes.

Q   Okay. And how long have you had this problem?

---

[2]Whether "doesn't" is an error in the transcript is unclear. The transcript uses "doesn't." Tr. 57.

3

> A   It's been about three or four years now.
>
> Q   Okay. Do you -- need to go to the bathroom, do you need to go, like "right now" or can you wait?
>
> A   No, it [h]as to be right now.
>
> Q   Okay. Have you ever had any accidents?
>
> A   No.

Tr. 56–58.

The administrative record includes records from Borland Groover Clinic for gastrointestinal problems. *See* Exhibit C5F (Tr. 731–71) and Exhibit C9F (Tr. 806–09). The records show five visits between April 2018 and April 2019, including one for a colonoscopy for which a repeat exam was "advised within 5 years." Tr. 736. A note from January 2019 states:

> Ms. Fitch comes in for follow-up regarding dysphagia, history of Nissen fundoplication, abdominal bloating, constipation, and colon cancer screening.
>
> May 1, 2018 EGD showed postop changes from Nissen fundoplication. Normal GE junction with biopsy showing mild acute and chronic inflammation. …
>
> January 11, 2019 upper GI showed small hiatal hernia. Mild spontaneous reflux. …
>
> She was last seen November 29, 2018 regarding persistent dysphagia. She developed some diarrhea after a recent hysterectomy.
>
> She called in on January 16, 2019 with increased constipation after her barium swallow. She was advised magnesium citrate and then MiraLax b.i.d.[]
>
> She reports continued abdominal symptoms. She has reflux. She was started on Zantac. She has abdominal bloating and gas. She is using Dulcolax. She has gained weight.

Tr. 736.

Under "My Assessment," the provider wrote in part:

> Esophageal dysphagia … Ms. Fitch continues to have abdominal symptoms. She has increased reflux symptoms although her upper GI shows only minimal reflux and a recurrent small hiatal hernia. She continues to have abdominal bloating and constipation. She has gained weight. I will suggest a trial of Linzess 290 micrograms in place of the Dulcolax.

Tr. 738.

The latest note from April 2019 states that Fitch's constipation improved with Linzess. Tr. 808. Fitch was directed to follow up in six months. Tr. 808.

At step two of the five-step process,[3] the ALJ found Fitch has a severe impairment of degenerative disc disease of the lumbar spine. Tr. 35. The ALJ added,

> Furthermore, the overall evidence supports a finding that any other condition, not specifically mentioned in this decision but might be mentioned briefly in the record, is not considered severe. In reviewing the record, special attention was given to the duration and frequency of conditions for which the claimant sought treatment. Therefore, I find that those impairments that are not specifically mentioned reveal only a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of education or work experience and are, therefore, non-severe.

---

[3]To decide whether a person is disabled, the Social Security Administration ("SSA") uses a five-step sequential process, asking whether (1) she is engaged in substantial gainful activity, (2) she has a severe impairment or combination of impairments, (3) the impairment or combination of impairments meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1, (4) she can perform any of her past relevant work given her RFC, and (5) there are a significant number of jobs in the national economy she can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4).

Tr. 36.

The ALJ found Fitch has the residual functional capacity ("RFC") to perform "light work" with additional limitations: "no balancing but occasional other postural activities (climbing/stooping/kneeling/crouching/crawling)" and "no concentrated exposure to vibrations, work around moving mechanical parts, or work at unprotected heights." Tr. 36.

In discussing Fitch's testimony, the ALJ stated,

> The claimant also testified that she has acid reflux and had surgery in May 2019. She said she has another hernia which affects her when eating and using the bathroom and causes nausea. She explained that she has not been able to vomit since the surgery and takes longer than normal to use the restroom.

Tr. 37.

After summarizing Fitch's testimony, the ALJ stated,

> After careful consideration of the evidence, I find that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because, although the overall medical evidence of record indicates the claimant has been treated for degenerative disc disease of the lumbar spine, the evidence does not support the degree of limitation alleged by the claimant.

Tr. 37.

The ALJ discussed some of the evidence. Tr. 38–40. In the discussion, the ALJ stated, "April 2019 Borland Groover records indicate that the

claimant's BMI was 31.07 (Ex. C9F). She was treated conservatively for chronic constipation." Tr. 38. The ALJ also described a July 2019 visit to Family Medical Centers showing abnormal findings on an abdominal exam and a musculoskeletal exam. Tr. 38–39 (citing Exhibit C17F). At the end of the discussion, the ALJ stated,

> In sum, I acknowledge that the claimant has work-related limitations associated with the impairments and associated symptoms, which includes pain, difficulty with balance, medication side effects, and limited activities of daily living, among other things. However, such limitations are accounted for in the [RFC] by restricting the claimant to less than the full range of light work with additional postural and environmental limitations. The overall medical evidence does not support the need for further limitations and has not revealed findings sufficient to preclude all work activity.

Tr. 39–40. After the above statement, the ALJ cited exhibits in the record but omitted Exhibit C5F (most of the treatment records for gastrointestinal issues from Borland-Groover Clinic).

At the administrative hearing, a vocational expert testified that being off task for twenty percent of the workday at unpredictable intervals would preclude employment and that the usual employer tolerance for absenteeism is twice a month after exhausting accrued time. Tr. 59–60.

Under 42 U.S.C. § 405(g), a court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted).

7

In contending the decision is not supported by substantial evidence because the ALJ failed to consider her abdominal issues and nausea, Fitch emphasizes these statements from her hearing testimony: she had hernia surgery in May 2019; she had two procedures to correct "very bad" acid reflux, they did not work, and she again has problems; she has problems with eating and using the bathroom; she has nausea daily; she takes medication for nausea, and the nausea subsides after ten to fifteen minutes; she must take medication whenever she eats; she cannot vomit but must lie down; medication causes difficulty controlling her bowels, resulting in more frequent and longer bathroom breaks; she sees a gastroenterologist and has had these problems for three or four years; and she is scheduled for another procedure to diagnose intestinal issues and determine the necessity of another hernia surgery. Doc. 20 at 5–6 (citing Tr. 56–58).

Contending "it is clear that the abdominal issues are longstanding issues," Doc. 20 at 5, Fitch references two previous applications for benefits. Doc. 20 at 2; *see* Tr. 62–103 (previous ALJ decisions). She observes the first resulted in a closed period of benefits from July 2012 to March 2014 for gastroesophageal reflux disease. Doc. 20 at 2. She observes the second in 2015 was denied, but the ALJ found her hernias were severe impairments. Doc. 20 at 2.

Fitch acknowledges the ALJ's discussion of her testimony about intestinal and acid-reflux problems but observes his findings about the consistency of her statements appear to have been "cut and paste[d]" because he uses "his or her" and the statement mentions only back problems. Doc. 20 at 6–7. She contends that if she "feels nauseous after every meal and must lay

8

down or … go to the restroom on a frequent basis, she would be off task during the day." Doc. 20 at 6.

To be eligible for benefits, a claimant must show she is disabled. 20 C.F.R. § 416.912(a); *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). A claimant is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

An ALJ must show he considered the claimant's impairments—severe and non-severe—in combination at step three and in assessing the RFC. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019).

An ALJ must consider all relevant record evidence. 20 C.F.R. §§ 416.920(a)(3), 416.920b. An ALJ's determination may be implicit, but the "implication must be obvious to the reviewing court." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The ALJ must "state with at least some measure of clarity the grounds for his decision"; the disability determination must not be affirmed "simply because some rationale might have supported" it. *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). A court may not "accept appellate counsel's post hoc rationalizations for agency action; for an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.*, 417 U.S. 380, 397 (1974); *accord Baker v. Comm'r of Soc. Sec.*, 384 F. App'x. 893, 896 (11th Cir. 2010).

9

To determine disability, the Social Security Administration ("SSA") considers pain and other symptoms and the extent to which the symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). Statements about symptoms alone cannot establish disability. *Id.* § 416.929(a)–(b). Objective medical evidence from an acceptable medical source must show a medical impairment that "could reasonably be expected to produce the pain or other symptoms" and, when considered with the other evidence, would lead to a finding of disability. *Id.*

The finding that an impairment could reasonably be expected to produce the symptoms does not involve a finding on the intensity, persistence, or functionally limiting effects of the symptoms. *Id.* § 416.929(b). For that finding, the SSA considers all available evidence, including medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. *Id.* § 416.929(a), (c). The SSA then determines the extent to which the "alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how" the symptoms affect the ability to work. *Id.* § 416.929(a).

Factors relevant to assessing pain or other symptoms include daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication to alleviate the symptoms; treatment for the symptoms other than medication; and measures used to relieve the symptoms. *Id.* § 416.929(c)(3).

To determine the extent to which pain or other symptoms affect a claimant's capacity to perform basic work activities, the SSA considers statements about the intensity, persistence, and limiting effects; the statements in relation to the objective medical and other evidence; any inconsistencies in the evidence; and any conflicts between the statements and other evidence, including history, signs, laboratory findings, and statements by others. *Id.* § 416.929(c)(4).

An ALJ must clearly articulate explicit and adequate reasons for rejecting a claimant's testimony about pain or other symptoms.[4] *Dyer*, 395 F.3d at 1210. A court will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ failed to show he considered Fitch's impairments in combination in assessing the RFC and failed to clearly articulate explicit and adequate reasons for rejecting Fitch's testimony about her abdominal issues and nausea and their effects. He identified no inconsistencies between the evidence and Fitch's testimony about her abdominal issues (e.g., vomiting, nausea, acid reflux, bloating) and failed to consider the records related to these problems other than to state she was treated conservatively for constipation without citing the record. Tr. 38. To the extent the Acting Commissioner offers reasons Fitch's testimony is inconsistent with the evidence, *see* Doc. 21 at 10, those arguments cannot serve as "post hoc rationalizations for agency actions,"

---

[4]Social Security Ruling ("SSR") 16-3p—applicable March 28, 2016—rescinded a previous SSR. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (republished). The SSR removed "credibility" from policy statements because the regulations do not use that term. *Id.* at *2. The SSR clarified that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Because the ALJ issued his decision on April 24, 2020, Tr. 41, the new SSR applies here.

11

*see Fed. Power*, 417 U.S. at 397 (quoted). These reasons were not provided by the ALJ. And with little discussion of the medical evidence related to Fitch's gastrointestinal problems, any implication is not obvious.

The Court **reverses** the Acting Commissioner's decision under sentence four of 42 U.S.C. § 405(g), as incorporated in 42 U.S.C. § 1383(c)(3), and **remands** the case to the Acting Commissioner to reconsider the medical records and Fitch's statements about her abdominal issues and nausea and take any other appropriate action.

The Court directs the clerk to enter judgment for Aster Fitch and against the Acting Commissioner of Social Security and close the file.

**Ordered** in Jacksonville, Florida, on November 1, 2021.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*